

# FILED

APR 1 9 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EARL J. THOMPSON,

NO. CIV. S-03-2513 LKK/KJM

     Plaintiffs,

  v.             O R D E R

CITY OF SHASTA LAKE, et al.,

     Defendants.
_____/

    Plaintiff, Earl J. Thompson, filed this action against the
City of Shasta Lake ("City") and various city officials[1] pursuant
to 42 U.S.C. § 1983, alleging that they violated his rights
protected by the Fifth and Fourteenth Amendments to the United
States Constitution. The matter is before the court on defendants'
motion to dismiss, see Fed. R. Civ. P. 12(b)(6), and, in the
alternative, for a more definite statement. See Fed. R. Civ. P.

_____

    [1] The defendants include Reed Boilon, Carla Thompson, Jeff
Wood, and Gary Moravec, in their individual and official
capacities, and Does 1-25.

1  12(e).  I decide the motions on the papers filed herein and after

2  oral argument.[2]

3  I.

4  **GENERAL ALLEGATIONS**

5  Plaintiff is a partner of Mid-State Properties, a housing

6  development company.  Compl. at 2.  He asserts that the defendants

7  engaged in a pattern of behavior designed to harass him and

8  interfere with his projects in the City of Shasta Lake.

9  According to plaintiff, the harassment began in August of

10  2001, when, while working on a construction project, defendant

11  Thompson, the City's Planning Director, and defendant Wood, a Code

12  Enforcement employee, fined plaintiff $4,000 for cutting down

13  several trees in violation of a City ordinance.  They also

14  suspended his building permits.  Id.  After appealing the violation

15  to both the Planning Commission and the City Council, the fine was

16  dismissed on the grounds that the plaintiff had previously obtained

17  permission from the City to cut the trees.  Id. at 3.

18  During January of 2002, soon after the plaintiff closed on the

19  purchase of property he planned to develop, the City placed a lien

20  on it, assertedly to secure payment for "deferred improvements."

21  Id.  The plaintiff challenged the lien in small claims court and

22  obtained a judgment removing the lien.  Id.

23  ////

24

25  [2]  Plaintiff filed an Amended Complaint on April 7, 2004.
Because plaintiff failed to comply with the requirements of Fed.
26  R. Civ. P. 15(a), the Amended Complaint will be stricken.

1    Later that year, plaintiff's housing project, known as
2  "Sophia," was interrupted when defendant Marovec, a former City
3  Intern, issued a stop order on the project.  Id.  The stop order
4  concerned whether a two-foot retaining wall was included in the
5  city-approved project plans.  Id.  The City thereafter twice
6  rejected plaintiff's revised retaining wall plans.  According to
7  plaintiff's licensed engineer, no revisions were necessary.  Id.
8  Further, the City contacted plaintiff's contractor and threatened
9  his license unless he withdrew from the project; the contractor did
10  withdraw and plaintiff was forced to hire a new contractor.  Id.
11  After experiencing these delays, the City approved the original
12  plans for the two-foot wall, without any changes.  Id.

13    During July of 2003,[3] the plaintiff began developing lots for
14  a modular homes project.  The City once again intervened, citing
15  a new effort to upgrade the provision of water to the new
16  neighborhood.  Id. at 3-4.  As part of the upgrade project, the
17  City required plaintiff to install a new water line and fire
18  hydrant prior to any development.  Id. at 4.  The project came to
19  a halt, since, according to plaintiff, the cost of meeting the
20  City's new requirement would have exceeded the cost of the lots
21  receiving the water service.  Id.
22  ////

23  _____

24        [3] The complaint alleges the relevant time as July 2003.  From
    the chronology of the events, it appears this is a typographical
25  error, and that the alleged events occurred in 2002.  Nonetheless,
    the court is not free to rewrite plaintiff's complaint and thus
26  will address the allegation as pled.

3

1    In preparing for the development, the plaintiff had purchased

2  two modular homes from out-of-state for shipment to the lots.   Id.

3  at 3.   After the project was suspended, plaintiff was forced to

4  store the homes elsewhere.   Id. at 4.   Subsequently, the City began

5  to issue daily violation notices to Mid-State for improper storage

6  of the modular homes.   Id.

7    On July 24, 2002, defendant Wood and Marovec approached

8  plaintiff at the Sophia project to serve him with a daily

9  violation.   Id.   Later that afternoon, County Deputy Sheriff, Wes

10  Collete, appeared at the project site and questioned plaintiff

11  regarding a threat he allegedly made to a city public official.

12  Id. at 5.   After plaintiff denied the accusation, the Deputy

13  questioned three construction workers, all of whom said that they

14  did not hear or witness any altercation while the city officials

15  were on the construction site earlier that day.   Id.   Based on the

16  accusations made by the City employees, the plaintiff obtained a

17  temporary restraining order (TRO) barring defendant Wood from

18  contacting him.   Id. at 5.[4]   Later that day, defendant Boilon

19  appeared at the site with the daily violation.   Id.   Plaintiff

20  signed the violation after being threatened with arrest if he

21  failed to do so.   Id.

22    The next day, Deputy Collete again appeared at the Sophia

23  project site and arrested plaintiff for threatening a public

24  official, a felony.   Plaintiff was jailed with bail set at

25

26    _____

    [4]  Plaintiff requested that Deputy Collete serve the TRO on
Wood, but he refused to do so.   Id.

4

1  $100,000.   Id.   In August of 2003, shortly before trial was

2  scheduled, the case was dismissed after the District Attorney

3  admitted there was no basis for the charges.   Id. at 5-6.

4      The plaintiff alleges that defendants continued to harass him.

5  Id.   According to plaintiff, the "Sophia" properties have twice

6  "fallen out of escrow", due to the City's insistence on purposeless

7  engineered drawings, stop work orders, and a host of other

8  impediments to completion.   Id.

9                               II.

10                            STANDARDS

11  A.  DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)

12      On a motion to dismiss, the allegations of the complaint must

13  be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

14  The court is bound to give the plaintiff the benefit of every

15  reasonable  inference  to  be  drawn  from  the  "well-pleaded"

16  allegations of the complaint.  See Retail Clerks Intern. Ass'n,

17  Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).

18  Thus, the plaintiff need not necessarily plead a particular fact

19  if that fact is a reasonable inference from facts properly alleged.

20  See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963)

21  (inferring fact from allegations of complaint).

22      In general, the complaint is construed favorably to the

23  pleader.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  So

24  construed, the court may not dismiss the complaint for failure to

25  state a claim unless it appears beyond doubt that the plaintiff can

26  prove no set of facts in support of the claim which would entitle

                                5

1  him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69,
2  73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).
3  In spite of the deference the court is bound to pay to the
4  plaintiff's allegations, however, it is not proper for the court
5  to assume that "the [plaintiff] can prove facts which [he or she]
6  has not alleged, or that the defendants have violated the . . .
7  laws in ways that have not been alleged."  Associated General
8  Contractors of California, Inc. v. California State Council of
9  Carpenters, 459 U.S. 519, 526 (1983).

10 **B.  DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(e)**

11      "If a pleading to which a responsive pleading is permitted is
12 so vague or ambiguous that a party cannot reasonably be required
13 to frame a responsive pleading, the party may move for a more
14 definite statement before interposing a responsive pleading."  Fed.
15 R. Civ. P. 12(e).  "The situations in which a Rule 12(e) motion is
16 appropriate are very limited."  5A Charles A. Wright & Arthur R.
17 Miller, Federal Practice and Procedure § 1377 (1990).  Furthermore,
18 absent special circumstances, a Rule 12(e) motion cannot be used
19 to require the pleader to set forth "the statutory or
20 constitutional basis for his claim, only the facts underlying it."
21 McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th
22 Cir.1990).  However, "even though a complaint is not defective for
23 failure to designate the statute or other provision of law
24 violated, the judge may in his discretion . . . require such detail
25 as may be appropriate in the particular case."  McHenry v. Renne,
26 84 F.3d 1172, 1179 (9th Cir.1996).

### III.

### ANALYSIS

**A.  FAILURE TO STATE A CLAIM**

The defendants contend that all of plaintiff's claims are barred by an applicable one-year statute of limitations. Plaintiff argues that his claims, arising under § 1983, are governed by the four-year statute of limitations provided by 28 U.S.C. § 1658. For the reasons explained below, I conclude that the problem is both complex and subtle, and that neither the plaintiff nor the defendant is completely correct.

Congress has provided for a four-year federal "catch-all" statute of limitations for claims arising under any statute enacted after 1990 that does not contain a statute of limitations. <u>See</u> 28 U.S.C. § 1658(a).[5]  Section 1983 does not contain its own statute of limitations; it was, however, originally enacted prior to December 1, 1990.  Nonetheless, it does not follow that § 1658(a) is inapplicable.

It is generally agreed that preexisting statutes, amended by Congress after 1990, may be subject to the four-year statute of limitations. <u>Zubi v. AT&T Corp</u>., 219 F.3d 220 (3d Cir. 2000); <u>Madison v. IBP</u>, 257 F.3d 780 (8th Cir. 2001); <u>Jones v. R.R. Donnelley & Sons Co</u>., 305 F.3d 717 (7th Cir. 2002).  The

---

[5]  The statue provides:

"A civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues."

1   applicability of the catchall statute turns on whether the

2   amendment essentially continues the preexisting statute, or so

3   fundamentally alters the statute as to, in effect, create a new

4   cause of action.   Id.

5       Section 1983 of Title 42 was amended on October 19, 1996, to

6   limit injunctive relief against judicial officers.   See Federal

7   Courts Improvement Act of 1996, Pub.L. 104-317, Title III,

8   § 309(c), 100 Stat. 3853.  That amendment, however, merely limits

9   relief against a specified group of defendants, not relevant to the

10  instant litigation, and does not fundamentally alter the statute

11  or create a new cause of action.  For that reason, I conclude,

12  § 1983 incorporates the applicable statute of limitations of the

13  state in which the cause of action arose.   As it turns out,

14  however, recent events make the identification of the applicable

15  statute less than pellucid.

16      Relying on Wilson v. Garcia, 471 U.S. 261 (1985), the Ninth

17  Circuit has repeatedly held that the applicable limitations period

18  for § 1983 actions is contained in the general personal injury

19  statute. See, e.g., McDougal v. County of Imperial, 942 F.2d 668,

20  672 (9th Cir. 1991) ("because § 1983 actions are best characterized

21  as actions for injuries to personal rights, courts should borrow

22  the state statute of limitations that applies to personal injury

23  actions.") (internal citation omitted).  Until recently, Cal. Civ.

24  Proc. Code § 340(3) governed the statute of limitations for

25  personal injury cases in California.  The statute established a

26  one-year statute of limitations for actions "for libel, assault,

battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for death of one caused by the wrongful act or neglect of another . . . ." Cal. Civ. Proc. Code § 340(3) (West 1982).

The problem relative to the applicable statute of limitations, however, has been made less certain by virtue of an amendment of § 340(3) in 2002, effective in January 1, 2003.  See Cal. Senate Bill 688 (Burton), State 2002, ch. 448, §§ 2, 3.  Senate Bill 688 changed the statute of limitations period for personal injury torts.  Id.  Pursuant to the amendment, California now provides for a specific one-year statute for false imprisonment, see Cal. Civ. Proc. Code. § 340(c),[6] and a two-year statute for other personal injury torts, see Cal. Civ. Proc. Code. § 335.1[7].

Plaintiff alleges essentially two causes of action: one, a Fourth Amendment claim predicated on the alleged wrongful arrest and imprisonment, and two, a Fourteenth Amendment claim for a denial of equal protection.   I now examine what statute of

---

[6]  Cal. Civ. Proc. Code § 340(c) provides, in relevant part:

"Within one year:  An action for libel, slander, false imprisonment, seduction of a person below the age of legal consent . . . ."

(West Supp. 2003).

[7]  Cal. Civ. Proc. Code § 335.1 provides, in relevant part:

"Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

(West Supp. 2003).

1  limitations applies to each of plaintiff's claims.

2      The Supreme Court has addressed the question of which state
3  statute applies when a state has multiple statutes of limitations
4  applicable to personal injury/tort actions.  The Court held that
5  "where state law provides multiple statutes of limitations for
6  personal injury actions, courts considering § 1983 claims should
7  borrow the general or residual statute for personal injury
8  actions."  Owens v. Okure., 488 U.S. 235, 249-50 (1989).  Since
9  January 1, 2003, California's residual statute of limitations for
10 personal injury actions has been Cal. Civ. Proc. Code § 335.1,
11 "since [that] section contains an express 'catchall' provision,
12 covering any 'injury to or . . . death of one caused by the
13 wrongful act or neglect of another.'"  McDougal, 942 F.2d at 672
14 (internal citations omitted).  Therefore, although the statutory
15 period for false arrest and imprisonment claims is specifically
16 provided for in § 340(c), they, as well as the equal protection
17 claims, are governed by the new, two-year residual period.

18     The court's inquiry concerning the statute of limitations
19 applicable to plaintiff's claims does not end here, however.  The
20 next question is whether the new two-year statutory period applies
21 retroactively to plaintiff's pre-2003 claims, or whether those
22 claims are still governed by the former one-year personal injury
23 statute of limitations.  Fortunately, the California Supreme Court
24 has conclusively resolved this issue.

25     Unless otherwise expressly excepted, a new statute which
26 enlarges a statutory limitations period applies to matters that are

1   not already barred by the original period at the time the new

2   statute goes into effect.  Mudd v. McColgan, 30 Cal. 2d 463, 468

3   (1947); Douglas Aircraft Co. v. Cranston, 24 Cal. 2d 462, 465

4   (1962).  Such application to pending matters "is prospective[,]

5   rather than retrospective," therefore, "there is no impairment of

6   vested rights." Mudd, 30 Cal.2d at 468.  The new statutory period

7   may be applied retroactively, reviving matters already barred, only

8   if the legislature clearly stated such an intent.  See Douglas

9   Aircraft, 24 Cal. 2d at 466 (amendment enlarging the statute of

10  limitations did not apply retroactively where the statute did not

11  expressly so provide, but applied "only to claims on which the

12  statute of limitations had not run on the effective date of the

13  act."); Moore v. State Bd. of Control, 112 Cal. App. 4th 371, 378-

14  379 (2003) (holding that where the application of a new or amended

15  statute of limitations would effectively revive an already time-

16  barred claim, retroactivity is prohibited in the absence of a clear

17  legislative intent to the contrary.).  The state Supreme Court

18  explained that "[t]hese rules afford warning to potential

19  defendants that until the statute of limitations has run it may be

20  extended, whereas after it has run, they may rely upon it in

21  conducting their affairs." Douglas Aircraft, 24 Cal.2d at 465.

22     Section 335.1 does not expressly provide that it applies

23  retroactively to claims already time-barred under former § 340(3).[8]

24  _____

25      [8]  The legislature carved out an exception for one class of
    plaintiffs when it created § 340.10.  That section provides that
26  the two-year statute of limitations set forth in Section 335.1
    shall apply to any action brought for injury to or death of any

1   Neither does it expressly state that it does not apply to matters

2   still pending at the time it went into effect.  Under <u>Mudd</u> then,

3   the two-year limitations period will apply to plaintiff's claims

4   that were not already time-barred on January 1, 2003.  The

5   determination of whether the claims were time-barred under the

6   former one-year limitations period, also depends, however, on when

7   the claims began to accrue.  With the foregoing determinations and

8   frame of analysis, I next examine each of plaintiff's claims

9   separately to determine their timeliness.

10      **1.   <u>Fourth Amendment</u>**

11      The plaintiff claims that his constitutional rights were

12  violated when he was arrested and jailed on July 25, 2003.  Compl.

13  at 5; Pl's Oppo. to Mot. to Dismiss at 1.  "[A]n arrest without

14  probable cause violates the Fourth Amendment and gives rise to a

15  claim for damages under § 1983." <u>Lee v. City of Los Angeles</u>,  250

16  F.3d 668 (9th Cir. 2001) (<u>quoting</u> <u>Borunda v. Richmond</u>, 885 F.2d

17  1384, 1391 (9th Cir. 1988)).

18      Although state law provides the statute of limitations,

19  federal law determines when a civil rights claim accrues.  <u>Morales</u>

20  <u>v. City of Los Angeles</u>, 214 F.3d 1151, 1154 (9th Cir. 2000)(<u>citing</u>

21  <u>Tworivers v. Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999)).  Under

22  federal law, a cause of action generally accrues when the plaintiff

23  "knows or has reason to know of the injury which is the basis of

24  the action."  <u>Trotter v. Int'l Longshoremen's & Warehousemen's</u>

25  ─────────────

26  victim of the terrorist events of September 11, 2001.  <u>See</u> Cal.
    Civ. Proc. Code. § 340.10.

1  Union Local 13, 704 F.2d 1141, 1143 (9th Cir. 1983).  That general

2  rule is not controlling here, however, where criminal charges

3  connected with incidents forming the basis of a § 1983 action are

4  pending.   In this Circuit, as I explain below, the statute of

5  limitations does not accrue until the criminal charges against the

6  plaintiff seeking to bring the § 1983 action are resolved.

7       It is established that, when a plaintiff has been convicted

8  of a crime, a Fourth Amendment claim for false arrest and

9  imprisonment begins to accrue when the conviction is overturned.

10  Cabrera v. City of Huntington Park,159 F.3d 374, 380 (9th Cir.

11  1998).   Applying the reasoning of Heck v. Humphrey, 512 U.S. 477

12  (1994),[9] the Cabrera court found that if the plaintiff were allowed

13  to bring his § 1983 claim before his conviction was overturned, a

14  finding that there was "no probable cause [for his arrest] would

15  'necessarily imply' that [his] conviction . . . was invalid."  159

16  F.3d at 380.   The court therefore concluded that a § 1983 claim

17  challenging an arrest does not begin to accrue until the

18  plaintiff's conviction is overturned.   More recently, the Ninth

19  Circuit addressed whether Heck and Cabrera apply to cases where a

20  plaintiff is not yet convicted, but faces a potential conviction.

21  The Circuit answered that question in the affirmative.   Harvey v.

22  Waldron, 210 F.3d 1008 (9th Cir. 2000).   First, the court noted

23  ─────────────────

24       [9]  In Heck v. Humphrey, the Supreme Court held that a prisoner
    is barred from bringing a § 1983 suit to recover damages, when
25  establishing the basis for the damages necessarily demonstrates the
    invalidity of the conviction, unless the plaintiff can demonstrate
26  that the conviction or sentence has already been invalidated.  512
    U.S. at 486-90.

that "[a] claim by a defendant in an ongoing criminal prosecution which necessarily challenges the legality of a future conviction on a pending criminal charge lies at the intersection of the federal habeas corpus statute and the Civil Rights Act of 1871." Id. at 1014.  It then recognized that the holding of Heck seeks to avoid "the potential for inconsistent determinations on the legality [of] the civil and criminal cases" that may result in a collateral attack on the prosecution in a civil suit." Id.  The Ninth Circuit determined that the potential for inconsistent determinations identified in Heck was equally present where the case was pending, since a successful § 1983 claim would necessarily undermine the validity of a future conviction.  The court concluded that, because, "there is no difference between a conviction which is outstanding at the time of the civil rights action is instituted and a potential conviction on a pending charge," the claim does not accrue until the criminal prosecution no longer exists.  Id.

Under Harvey, the former one-year statute of limitations did not begin to accrue as to plaintiff's false arrest and imprisonment claims until he no longer faced criminal charges.  Under the allegations, the charge brought against him was not dismissed until August of 2003.  Compl. at 5, 6.  Accordingly, plaintiff had until August of 2004 to file his claims for false arrest and false imprisonment under the one-year limitations period.  Moreover, because these claims were not yet barred on January 1, 2003, the new two-year limitations period applies, and the limitations period does not expire until August of 2005.

1    While plaintiff's Fourth Amendment claims are timely, they are

2  deficient in another regard.  As noted, plaintiff was arrested by

3  a County Deputy Sheriff and was prosecuted by the District

4  Attorney, a county-wide official.[10]  The pleadings, however, name

5  only City officials, and plaintiff does not allege how they could

6  be held liable for his arrest.  Because it may be that plaintiff

7  intends to assert that the city officials caused the arrest,

8  plaintiff's false imprisonment and false arrest claims will be

9  dismissed, but leave to amend will be granted.

10    **2.   Equal Protection Claim**[11]

11    Plaintiff also claims that the City violated his right to

12  equal protection when it selectively enforced city codes against

13  him.  I first examine whether his claim is timely.  Because the

14  Heck reasoning is inapplicable to plaintiff's claims premised on

15  alleged selective enforcement, they accrued when he first knew or

16  had reason to know of the injury that is the basis of his action.

17  _____

18    [10] It is well-established, however, that a district attorney
acts for the state when prosecuting a defendant.  See Pitts v.
19  County of Kern, 17 Cal.4th 340 (1998); Ceballos v. Garcetti, 361
F.3d 1168, 1182-83 (9th Cir. 2004).
20

21    [11] Plaintiff's complaint alleges that defendants violated his
rights under the Fifth Amendment.  The Due Process Clause of the
22  Fifth Amendment and the equal protection component thereof apply
only to actions of the federal government, and not to those of
23  state or local governments.  Lee v. City of Los Angeles, 250 F.3d
at 687 (9th Cir. 2001)(citing Schweiker v. Wilson, 450 U.S. 221,
24  227, (1981)).  The plaintiff does not allege that any of the
defendants are federal actors.  Those provisions are, however,
25  incorporated against those acting under state law, through the
Fourteenth Amendment.  See Webb's Fabulous Pharmacies, Inc. v.
26  Beckwith, 449 U.S. 155, 160 (1980).  Thus, plaintiff may proceed
with his equal protection claim.

15

1    Plaintiff alleges instances of selective enforcement during August

2    of 2001, January of 2002, July of 2003, and December of 2003.  As

3    I now explain, the statute of limitations runs separately from each

4    of the discrete instances.

5        Although the Supreme Court has held that in Title VII hostile

6    work environment claims, the nature of the claim permits

7    application of the "continuing violation" doctrine, see National

8    R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061 (2002)[12], the

9    Circuit has held the doctrine inapplicable to cases where a

10   plaintiff alleges he has been subjected to a pattern of hostile or

11   harassing conduct by a municipality. See RK Ventures, Inc. v. City

12   of Seattle, 307 F.3d 1045, 1061 (9th Cir. 2002) (rejecting

13   plaintiff's analogy of a hostile work environment claim to a claim

14   where a municipality subjected plaintiff to a pattern of hostile

15   or harassing conduct, concluding that the latter were discrete

16   acts, actionable on their own, rather than a series of separate

17   acts that collectively constituted one unlawful practice); see also

18   Carpenteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d

19   822 (9th Cir. 2003) (rejecting the continuing violation theory

20   where plaintiff alleged seven incidents of selective enforcement

21   by City, in violation of his equal protection rights, finding that

22   the incidents were discrete acts).  In sum, any discrete, allegedly

23   _____

24       [12]   The High Court has held that in Title VII hostile work
     environment claims, the entire period of the harassment may be
     considered actionable as one act, thus, a "continuing violation."
25   The reason for this exception to the 'discrete acts rule' is that
     harassment, by definition, occurs over a series of events and time,
26   in direct contrast to discrete acts.

1   discriminatory acts are time-barred even if they enjoy a close

2   relation to other discrete acts falling within the statue of

3   limitations.

4        I begin with the alleged instance of selective enforcement

5   occurring during August of 2001.  Because, under the old scheme of

6   § 340(3), plaintiff's claim expired on August of 2002, it cannot

7   benefit from the new two-year statute of limitations.  This claim

8   is therefore barred and must be dismissed.[13]  Plaintiff's claims

9   arising from alleged occurrences during January of 2000 and July

10  of 2003, however, are timely.  While the claim based on the January

11  2002 incident would be untimely under the one-year limitations

12  period, the current statute of limitations applies to this claim,

13  since, on January 1, 2003, it was not already barred.

14       In addition to the limitations bar, defendants maintain that

15  the plaintiff fails to allege a prima facie case.  I must agree.

16       The "'purpose of the equal protection clause of the Fourteenth

17  Amendment is to secure every person within the state's jurisdiction

18  against intentional and arbitrary discrimination, whether

19  occasioned by express terms of a statute or by its improper

20  execution through duly constituted agents.'"  Sioux City Bridge Co.

21  v. Dakota County, Neb., 260 U.S. 441, 445 (1923)(quoting Sunday

22  Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918)).

23  _____

24       [13]  Although this cause of action is dismissed, the time-
    barred event can be used by plaintiff "as evidence to establish
25  motive and to put the timely-filed claims in context." Carpenteria
    Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 829
26  (9th Cir. 2003) (citing RK Ventures, 307 F.3d at 1062).

1   In order to bring such a claim, the plaintiff must allege that he

2   has been "intentionally treated differently from others similarly

3   situated and that there is no rational basis for the difference in

4   treatment."  Id. at 565.[14]

5       Plaintiff alleges that the City impeded the development of his

6   property by the imposition of arbitrary conditions.  The facts, as

7   alleged, show a history of city official animosity and a sporadic

8   series of independent decisions relating to permits and other

9   requirements.  Plaintiff's complaint alleges that the

10  requirements and conditions imposed have been for "no purpose,"

11  thus sufficiently alleging that the treatment had no rational

12  basis.  Nowhere, however, does plaintiff allege that he was treated

13  differently from others similarly situated.  Accordingly,

14  plaintiff's equal protection claim is deficient and must be amended

15  to allege this latter element, if he can fairly do so.

16      **3.  <u>Right to Pursue Profession</u>**

17      Plaintiff avers that his complaint sufficiently states a cause

18  of action under the Fourteenth Amendment because the defendants

19  subjected him to a "malicious campaign . . . to deny him an

20  opportunity to earn a living."  Pl's Oppo. to Mot. to Dismiss at

21  1-2.  I do not examine whether this claim is timely, however,

22  because, as I explain below, he does not state a claim for which

23  relief may be granted.

24  _____

25      [14]  Plaintiff properly brings his equal protection cause of
    action as a "class of one," since it is not necessary for him to
    allege membership in a class or group.  <u>Village of Willowbrook v.</u>
26  <u>Olech</u>, 528 U.S. 562, 564 (2000).

18

1      It is established that property rights protected by the due

2  process clause of the Fourteenth Amendment are ordinarily derived

3  from and measured by state law. Board of Regents v. Roth, 408 U.S.

4  564 (1972). Liberty interests, however, may be defined by the Due

5  Process Clause itself. Planned Parenthood v. Casey, 505 U.S. 833,

6  847-849 (1992); Meyer v. Nebraska, 262 U.S. 390, 399-403 (1923).

7  In this regard, it has been held that "[t]he Fourteenth Amendment

8  guarantees an individual the right to engage in any of the common

9  occupations or professions of life.  Such a right is both a

10  'liberty' and 'property' right protected from state deprivations

11  or undue interference." Keker v. Procunier, 398 F.Supp. 756, 760

12  (E.D. Cal. 1975)(citing Meyer v. Nebraska, 262 U.S. 390 (1923));

13  Greene v. McElroy, 360 U.S. 474 (1959); Board of Regents v. Roth,

14  408 U.S. 562 (1972); Larkin v. Bruce, 352 F.Supp. 1076 (D. Wisc.

15  1972).  The High Court, however, has delimited the circumstances

16  where governmental interference with one's profession amounts to

17  a violation of the right to pursue a profession.

18      In Conn v. Gabbert, 526 U.S. 286 (1999), the Court found that

19  an attorney who was served with and searched pursuant to a warrant

20  while his client was testifying, was not deprived of his right to

21  engage in his profession.  The Court compared this "brief

22  interruption" of his profession with a complete prohibition,

23  holding that the latter circumstances raised a due process claim,

24  but the former did not.  While the Supreme Court did not address

25  intermediate circumstances, the Ninth Circuit has read Gabbert as

26  requiring "a complete prohibition" before a due process claim may

1  lie.  See Lovory v. Barnhard, 329 F.3d 1019, 1022 (9th Cir. 2003);

2  Dittman v. California, 191 F.3d 1020, 1029 (9th Cir. 1999).[15]

3      In the matter at bar, plaintiff claims a string of incidents

4  occurring over three years in which the City of Shasta Lake

5  obstructed or interrupted his housing development projects.

6  Although he asserts that the defendants' conduct has made it more

7  difficult for him to engage in his occupation, he does not allege

8  that the City or its agents' conduct completely denied him the

9  right to do so.  Accordingly, plaintiff cannot successfully state

10 a cause of action predicated on the denial of his right to practice

11 his profession and his claim must be dismissed.

12      **4.   Claims against defendants Reed Boilon & Carla Thompson**

13      The defendants argue that the complaint does not contain any

14 facts which give rise to any cause of action against defendants

15 Boilon and Thompson.  While defendants ask that the claims against

16 defendant Boilon and Thompson be dismissed, they do not explain why

17 the facts alleged are insufficient.  The motion, being

18 essentially unsupported, will be denied.

19 **B.   IMMUNITY**

20      Finally, I address defendant's contention that plaintiff's

21 complaint must be dismissed because any actions alleged to have

22 _____

23 [15]  Prior to Gabbert, a judge of this court held that state
   officials violated an attorney's right to pursue his profession
   where prison regulations prohibited him from having the "privacy

24 and freedom from intrusion essential to the attorney-client
   relationship," and such circumstances supported a claim under the

25 Fourteenth Amendment.  See Keker v. Procunier, 398 F.Supp. 756, 761
   (E.D. Cal. 1975).  The viability of Keker after Gabbert is

26 uncertain, but need not be resolved here.

1   violated plaintiff's rights were protected by state law.   The
2   defendants cite to various state laws to show that they are
3   entitled to qualified immunity.   It is well settled, however, that
4   "[i]mmunity under § 1983 is governed by federal law; state law
5   cannot provide immunity from suit for federal civil rights
6   violations."   <u>Wallis v. Spencer</u>, 202 F.3d 1126, 1144 (9th Cir.
7   2000)(<u>citing</u> <u>Martinez v. California</u>, 444 U.S. 277, 284 (1980)).
8   Defendants' argument therefore fails.[16]

9   **C.    MOTION FOR A MORE DEFINITE STATEMENT**

10      In the alternative, the defendants ask that the court grant
11  their motion for a more definite statement.   Given that the
12  plaintiff will have to amend his complaint to maintain his causes
13  of action for false arrest and imprisonment and violation of his
14  equal protection rights, it is unnecessary to examine this motion.

15                                **IV.**

16                            **CONCLUSION**

17      1.    Defendant's motion to dismiss is GRANTED;

18      2.    Plaintiff is granted thirty (30) days to file an
19  amended complaint consistent with this order;

20      3.    Defendants' motion for a more definite statement is
21  DENIED; and

22  ////

23  ////

24  _____

25      [16]   While arguments might be made concerning qualified
    immunity where state law protects accused conduct, defendants do
26  not make them, and it is hardly this court's duty to make them for
    defendants.

1       4.   The Amended Complaint heretofore filed is ordered

2   STRICKEN.

3       IT IS SO ORDERED.

4       DATED:  April 16, 2004.

5

6                                LAWRENCE K. KARLTON
                                 SENIOR JUDGE
7                                UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

United States District Court
for the
Eastern District of California
April 19, 2004

* * CERTIFICATE OF SERVICE * *

2:03-cv-02513

Thompson

   v.

City of Shasta Lake

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  April 19, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

Richard Bauche Price                          AR/LKK
Charter Davis LLP
1515 K Street
Suite 500
Sacramento, CA  95814

Randall Lee Harr
Harr Arthofer and Ayres
1415 Court Street
Redding, CA  96001

Jack L. Wagner, Clerk

BY: _____
Deputy Clerk